(Nos. 36509-10-12, cons.—

EUGENE ORME *et al., vs.* THE NORTHERN TRUST COMPANY, Trustee, *et al.,* Appellees.—(RAYMOND E. DE HAVEN *et al.,* Appellants.)

*Opinion filed May 25, 1962.—Rehearing denied July 12, 1962.*

C. Lysle Smith, and John Alden Powers, both of Chicago, for Eugene Orme *et al.,* plaintiffs.

Dixon, Morse, Knouff & Holmes, of Chicago, (Arthur Dixon, and Marshall Patner, of counsel,) for appellants Olive Caldwell *et al.*

Clausen, Hirsh, Miller & Gorman, of Chicago, (Norman A. Miller, and Jerome H. Torshen, of counsel,) for appellant Alice Lohrer.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago, (Louis A. Kohn, Edward R. Lev, and Thomas S. James, of counsel,) for appellant Raymond E. de Haven.

Roland Towle, Prentice H. Marshall, and Thomas P. Sullivan, all of Chicago, (Thompson, Raymond, Mayer, Jenner & Bloomstein, of counsel,) for appellants Adelheit von Hardenberg *et al.*

Dallstream, Schiff, Hardin, Waite & Dorschel, of Chicago, (Lester G. Britton, of counsel,) for appellee The Northern Trust Company.

Paul V. Myron, of Washington, D.C., Acting Director of Alien Property; James P. O'Brien, United States Attorney, and T. W. James, Assistant United States Attorney, both of Chicago, and Dallas S. Townsend, Arthur R. Schor, William H. Arkin, and Lillian C. Scott, all of Washington, D.C., for the Attorney General of the United States.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff Eugene Orme instituted proceedings in 1943 in the circuit court of Cook County to construe the will of Louisa G. Bigelow, which established a trust presently held by the defendant Northern Trust Company. The decree, rejecting plaintiff's interpretation of the instrument but authorizing that attorney fees be paid from the estate, was entered some 15 years later. It was substantially affirmed by the Appellate Court, and we have allowed and consolidated the diverse appeals of the alleged beneficiaries of the trust. This appeal also includes requests for relief under our Rule 32(4) filed by plaintiff, and by the Attorney General of the United States who vested the interests of certain German beneficiaries under the Trading With the Enemy Act. Tit. 50 App. U.S.C.A. 7(c).

The issues presented by this consolidated appeal include: whether a 1920 trial court decree barred plaintiff Orme's action under the doctrine of *res judicata;* whether the Rule in *Shelley's* case applied to the Bigelow will and created a fee simple interest in plaintiff's devisor; whether an adoptee of testatrix's grandchild is included within the designation

"children or heirs" in the will; whether the interests of the enemy aliens were properly vested by the Attorney General; and the propriety of the amount and allocation of counsel fees.

From the voluminous record it appears that on May 26, 1873, Louisa G. Bigelow executed her will creating a trust for her three minor granddaughters, ages 8, 6 and 4, respectively. The will, which will be considered in greater detail hereinafter, essentially provided life estates for the granddaughters, and on the death of the last surviving granddaughter the trust estate was to be divided equally among the "children or heirs" of the granddaughters; ⅓ to the "child or children, heirs or heirs" of each of them. In case of the death of any of the granddaughters "without issue," the property was to go to the "issue, heir or heirs" of the other granddaughters, and if all three grandchildren died "without issue or heirs" then the property was to go to the testatrix's immediate heirs and legal representatives according to the laws of Illinois. The will, apparently drafted by an American lawyer, was executed in Switzerland where testatrix, a woman over 70, was then residing. She died there August 31, 1873, and the will was probated in Illinois.

The granddaughters, who each married and had children, are referred to herein as Josephine Caldwell, Louise de Haven, and Sarah von Campe. The oldest, Josephine, died in 1919, leaving five children. They instituted proceedings to determine their rights under the will to the income from the share enjoyed by Josephine during her lifetime, and as affected by certain conveyances executed by Josephine's son William. That action joined Louise and Sarah, and culminated in the "1920 decree," which defendants claim is dispositive of this litigation. The terms of that decree will therefore be examined when we consider the merits of that claim.

In 1941 the second granddaughter, Louise, died. It ap-

pears that she had married German Baron von Alten in 1896, and in 1913 had become estranged from him and from her two daughters. She returned to the United States as soon as possible after World War I, had her citizenship restored by Act of Congress in 1920, and obtained a Nevada divorce in 1921. In 1923 she adopted an adult heir, the defendant Raymond de Haven. From her correspondence with the trustee in 1940 she evidenced concern that her German children and the German children of her sister Sarah von Campe would obtain ⅔ of the American estate, contrary to the intention of her grandmother. She was assured by the trustee that the 1920 litigation did not dispose of her interest. She then executed a codicil in 1941 devising to plaintiff, Dr. Eugene Orme, all of her undivided ⅓ interest in any principal or income in her grandmother's estate.

After the trustee refused to recognize Orme's interest under that codicil, Orme then instituted this proceeding in 1943. His complaint urges that the Bigelow will be construed to give Louise a fee-simple interest by operation of the Rule in *Shelley's* case, or alternatively, that the will was not capable of construction, so that Mrs. Bigelow died intestate with respect to the equitable remainder in trust.

The litigation proceeded tortuously during the ensuing years, with multifarious motions to dismiss argued repetitively by the trustee and by the parties, and with amended pleadings, counterclaims and subsidiary litigation. Raymond de Haven filed a counterclaim to ⅓ of the de Haven share as the adopted heir of Louise; Josephine's children insisted by motions that the cause was barred by the 1920 decree; and in 1949 the Attorney General of the United States became a party by virtue of vesting the interests of Louise's German daughters (Adelheit von Hardenberg and Irmgard von Alten) under the Trading With the Enemy Act. The case was delayed several years by subsidiary litigation adjudicating the propriety of the vesting and the dismissal of the Germans from the case. *Orme* v. *Northern Trust Co.*

410 Ill. 354, cert. den. *Von Hardenberg* v. *McGrath,* 343 U.S. 921, 96 L. ed. 1334.

In 1951 the testatrix's third granddaughter, Sarah von Campe, died in Switzerland. She was survived by her daughter, defendant Alice Lohrer, and by two sons, Edwin and Otto von Campe. Although Sarah had in her lifetime favored plaintiff's claim, she had been persuaded by her attorney to join the trustee in opposing it. Allegedly as a consequence of this pending litigation, she devised her entire estate to her daughter, who irrevocably assigned ⅓ to her brother Edwin. The interest of Otto, an enemy alien, was vested by the Attorney General.

After pleading consolidations and fact stipulations, the cause was finally tried before a master during some 24 days in 1955. The master's report, filed in 1957, recommended that the Bigelow will be construed to give an equitable life estate to testatrix's three granddaughters with equitable remainders to their "issue," rather than to their heirs-at-law; and that since the Rule in *Shelley's* case would not apply, the wills of Louise de Haven and Sarah von Campe would not transfer interests in the Bigelow estate, and plaintiff's claim should be denied. The report further recommended that the decree should not affect the interests of those entitled to distribution of the share formerly held for Josephine, and that all parties be allowed attorney fees, which would be charged against the shares of Louise and Sarah.

Upon failure of the parties to agree on the amount of legal fees, hearings on this issue were held before the master, who issued a report recommending fees totalling $221,000. The master's recommendations with respect to the substantive rights of the parties and the allocation of legal fees were adopted by the circuit court in its decree of March 2, 1959. The matter of fees became the basis of the Attorney General's appeal to the Appellate Court, which affirmed the circuit court, except that it increased by some $3,000 the counsel fees allowed de Haven, to include services

relating to the collateral attack on his adoption, and charged those fees solely against the de Haven share.

In adjudicating the diverse contentions of each of the parties on this consolidated appeal, we shall consider first whether this litigation is barred by the 1920 decree under the doctrine of *res judicata*. Since plaintiff's devisor, Louise de Haven, was joined in that earlier proceeding which involved a partial construction of the Bigelow will, plaintiff would ordinarily be bound under that doctrine by the issues determined, and those which properly could have been presented there. *Altemeier* v. *Harris,* 403 Ill. 345.

As we have noted, that litigation was instituted by Josephine's children on her death to determine the disposition of her share of the income, particularly as it was affected by certain conveyances by her bankrupt son William. The main issue was whether William's share was to be divided among Josephine's four other children, or go to William's wife and children under his deeds.

Since the Bigelow will was silent on the disposition of income on the death of testatrix's grandchild *with issue* while the other grandchildren were living, the court endeavored to find guidance in other provisions of the will. After concluding that the will was valid and must continue until the death of the last grandchild, the decree made certain findings with respect to the principal and income of Josephine's share. It recited that *by a construction of the will and as a result of the events which have happened,* on Josephine's death her four children and the wife and children of her son William came into possession and enjoyment (subject to the trust) of an equitable, but vested, fee in enumerated percentages of the share in which Josephine had a life interest. The decree further provided that the income therefrom was to be divided among them in the same proportion as their interest in the fee.

Although the decree recited that the question of construction with respect to Josephine's interest related equally

to the disposition of income and the equitable interest in the principal on the death of Louise and Sarah with surviving children, we perceive nothing in that 1920 decree which is inimical to plaintiff's claim. The conclusion that Josephine's children had a fee interest is in no way inconsistent with plaintiff's theory that testatrix's grandchildren acquired a fee interest by operation of the Rule in *Shelley's* case, which interest could pass by devise or descent. Unlike the *Altemeier* case (403 Ill. 345,) cited by defendants, plaintiff's claim does not run counter to the disposition or conclusions in the prior decree.

In judging the scope of the 1920 decree we find significance in its omissions and reservations. Nowhere is there any reference to "remainders," or any construction of the words "children or heirs," either as words of "purchase" or "limitation," or any other statement of the basis for its conclusion. Moreover, the decree itself specifies that it does not pass upon certain enumerated contingencies on the death of Louise or Sarah, or *"upon any question of construction not herein determined and settled."* (Emphasis supplied.)

Even more cogent is the fact that the court in the earlier litigation was confronted with entirely different issues. The court was not called upon, as in the instant case, to determine whether the interests of the granddaughter's children were acquired by "purchase" or by "descent." It was only required to determine whether Josephine's children were entitled to her share of the income and just how their interests were affected by William's deeds. The adversaries there were William, his wife and children on one hand and his brothers and sisters on the other. Hence, the Rule in *Shelley's* case was neither determinative nor involved in the adjudication of their adverse claims. That situation is in sharp contrast with the case at bar which raises squarely for the first time the issue of whether the testatrix's granddaughter had an interest capable of being devised. On that issue the Rule in *Shelley's* case is determinative.

In our judgment this basic difference in issues between the 1920 litigation and the instant case, considered along with the deliberate omissions and reservations in the earlier decree, indicate conclusively that the Rule in *Shelley's* case, on which plaintiff's claim is based, was in no way adjudicated in that prior litigation. Hence the 1920 trial court decree should not be deemed *res judicata* of this litigation. This conclusion, moreover, is in accord with that of the three chancellors who denied defendants' numerous motions to dismiss, and with the decision of the Appellate Court. *Orme* v. *Northern Trust Co.* 29 Ill. App. 2d 75.

It is therefore incumbent upon us to determine the merits of plaintiff's claim that the Rule in *Shelley's* case applied to the Bigelow will and gave Louise de Haven a fee interest which she devised to plaintiff. And although that venerable Rule was abolished in Illinois in 1953 (Ill. Rev. Stat. 1955, chap. 30, pars. 186, 187,) since it was in force when the Bigelow will was executed, (*Baker* v. *Scott*, 62 Ill. 86,) it must be given effect, if applicable.

The Rule in *Shelley's* case is simply that when a life estate is given to a person, followed by a remainder to his heirs, the heirs take nothing, but the life tenant takes the entire fee. The rule applies only where the gift in remainder refers to an indefinite line of succession, rather than to a specific class of takers. (Carey & Schuyler, Illinois Law of Future Interests, p. 151.) Before the Rule in *Shelley's* case can apply, the will must be construed to determine if such life estates and remainders were created. *Lydick* v. *Tate*, 380 Ill. 616, 622.

The relevant portions of the Bigelow will are paragraphs 4, 5, 6 and 7 of section 2. Paragraph 4 provides for the payment of income from the real and personal property to the grandchildren in equal parts *during their natural lives.* Paragraph 5 provides for the distribution of income on the death of a granddaughter *without issue,* and gives her share to the other grandchildren. Paragraph 6 provides that the

trust continue during the natural lives of the grandchildren, and that after the death of all the grandchildren the property shall be divided equally among the *children or heirs* of the grandchildren, with ⅓ to the *child or children, heir or heirs* of each named grandchild. In case of the death of any of said grandchildren *without issue* the particular share would go to the *issue, heir or heirs* of the other grandchildren; and on the death of two grandchildren *without issue,* then the whole estate shall go to the *issue or heirs* of the third grandchild. This paragraph further specifies that it is the intention of the testatrix that the property shall remain intact *free from the husbands* of any of the grandchildren, and that after the death of each and every one of them the property shall be divided among *their issue as hereinbefore specified.* Paragraph 7 provides that on the death of all the grandchildren *without issue or heirs,* the property goes to the testatrix's *immediate heirs and legal representatives* under the laws of Illinois.

In construing this classic example of inept legal draftsmanship, the words "children or heirs" must be viewed in the light of the context of the will. (*Baker* v. *Forsuman,* 15 Ill.2d 353, 359; Carey & Schuyler, Illinois Law of Future Interests, p. 163.) Plaintiff argues that the words should be construed to mean "heirs" in the technical sense, since the word "heirs" encompasses children, and is used here as a synonym to explain and enlarge that class. That interpretation, however, is inconsistent with the other provisions of the will. The fact that testatrix provided a gift over if any of the grandchildren died *without issue* indicates that she intended the remainder to go to specific takers, *i.e.,* the issue of each grandchild, rather than to an indefinite line of succession. If "heirs" in the technical sense had been intended, no such gift over on failure of "issue" would have been necessary or appropriate.

Plaintiff's interpretation also conflicts with testatrix's statement of her intention in this same paragraph. Here she

not only excludes husbands but explains that after the death of each grandchild the property shall be apportioned among *"their issue as hereinbefore specified."* Her use of the word "issue" alone and her assumption that this is the disposition she has already specified certainly militates against any interpretation that she intended to use the word "heirs" in its technical sense.

It would unduly prolong this opinion and be of limited value if we were to review the exhaustive authorities cited by counsel, since no will has a twin or even a brother. (*Hartwick* v. *Heberling,* 364 Ill. 523.) Plaintiff urges us, however, to adopt the reasoning of the Pennsylvania court in *Shapely* v. *Diehl,* 203 Pa. 566, 53 Atl. 374, which held that a limitation to a party for his natural life and at his death to his "children or heirs" created a fee in the first taker. The court found that the testator used the word "children," not as *"descriptio personarum,"* but as the first in a line of succession, and that he added the word "heir" as a synonym to enlarge and explain the preceding word "children." Therefore, the words "children or heirs" meant "heirs" in the technical sense, and the Rule in *Shelley's* case applied. But since the testatrix in the instant case manifested a different intention in her will by specifically stating that the property should be apportioned among the *issue* of her grandchildren, and providing gifts over if any of them died without issue—features which are not involved in the *Shapely* case—that decision can hardly be deemed determinative.

Those features also distinguish the case at bar from *Hartwick* v. *Heberling,* 364 Ill. 523, also cited by plaintiff, where we applied the Rule in *Shelley's* case to a will giving a person an estate during her natural life and at her decease to her "children *and* lawful heirs." The use of the word "and" in that limitation, rather than "or" as in the instant case, is an additional distinguishing element.

The case at bar is more analogous to the cases holding

that in gifts to a person and her (their) "heirs," with gifts over in case the first taker dies without issue, the word "heirs" will not be construed technically. It is interpreted to mean "issue," and, consequently, the Rule in *Shelley's* case cannot apply. (*Winchell* v. *Winchell*, 259 Ill. 471; *Baker* v. *Forsuman*, 15 Ill.2d 353.) In the *Winchell* case the court, in reversing a decree applying the Rule in *Shelley's* case, stated at p. 474: "His [testator's] intention was to limit the remainder to the heirs of the body of the complainant, since it was only in default of such heirs that the remainder was to go to others."

In our judgment the words "children or heirs" in the Bigelow will, construed in their context, and in the light of the decisions, meant that the property should go to the children of testatrix's granddaughters, if there were any living, or, if not, then to the issue of each grandchild. Under this interpretation the will created a life estate in each granddaughter, and a remainder to her children or issue. The Rule in *Shelley's* case, is therefore, not applicable, and plaintiff's claim, based thereon, must be denied.

We must determine next whether Raymond de Haven, as the adopted heir of Louise, is entitled to share in the estate as a member of the designated class of remaindermen. We find no merit in the Attorney General's collateral attack on de Haven's adoption. Since the Attorney General was not a party to that proceeding, he can question only want of jurisdiction of the subject matter. (*Gebhardt* v. *Warren*, 399 Ill. 196.) The stipulated facts show that the adoption decree was entered in full compliance with the Colorado statute, and was therefore entitled to full faith and credit in this proceeding. *In re Estate of Leichtenberg*, 7 Ill.2d 545.

We recognize, as de Haven insists, that the testatrix is presumed to have executed her will in accordance with existing adoption law (*Belfield* v. *Findlay*, 389 Ill. 526), which in this case was the act of 1867. That act authorized

adoptees to inherit from their adopting parents, but provided that as to all other persons the adopted child shall stand as if no such adoption had taken place. As de Haven emphasizes, that act was not as restrictive as the 1874 act, which specifically barred adoptees from inheriting property from lineal or collateral kindred. However, merely because the 1867 law contained no such specific prohibition does not warrant charging testatrix with a presumed intention to include an adoptee in her will. On the contrary, the Bigelow will itself precludes any such construction. It reveals instead a testamentary intention to limit the property to testatrix's blood kin by excluding husbands of the grandchildren, and by providing a gift over to their "issue," a concept which, at that time, meant heirs of the body. *Keegan v. Geraghty,* 101 Ill. 26, 35; *Winchell v. Winchell,* 259 Ill. 471:

While we perceive de Haven's distinction between taking through an adopting parent and taking directly from an ancestor, as noted in the cited dictum in *Continental Illinois Nat. Bank and Trust Co. v. Clancy,* 18 Ill.2d 124, it has no application here in view of the tenor of the will itself. In our judgment, therefore, the claim of Raymond de Haven was properly denied.

With respect to the claims of defendants von Hardenberg and von Alten, Louise's German children, they now contend that they acquired their interests, not on the death of their mother in 1941, but on the death of Sarah von Campe, the last surviving grandchild, in 1951; hence, since their interests were acquired after 1946, they could not be vested by the Attorney General. They argue further that this issue was not determined in the prior litigation in this court.

We find no merit to either of these arguments. Our prior judgment, (*Orme v. Northern Trust Co.* 410 Ill. 354) specifically determined the right of the Attorney General to vest these particular interests in 1949. We did not adjudi-

cate his power *in vacuo*. Moreover, even if that issue had not been adjudicated, it would not affect defendants' rights. While the trust was to continue until the death of the last surviving granddaughter, defendants' interests in the estate were acquired on the death of their mother in 1941. At that time they were not only entitled to the income from her share, but they acquired their proportionate share of the equitable fee in the estate. The fact that it was postponed in enjoyment pending the duration of the trust did not affect its acquisition or its indefeasibility as of that time. The interests of said defendants were therefore properly vested by the Attorney General, and their claims here were rightfully denied. The cases of *GMD. Niehaus & Co.* v. *United States,* (U.S. Ct. Cl.) 170 F. Supp. 419, and *Rogers* v. *Calumet Nat. Bank of Hammond,* 358 U.S. 331, 3 L. ed. 2d 344, cited by defendants, are inapplicable. Their remedy is under the Trading With the Enemy Act, as previously determined.

With respect to the amount and allocation of counsel fees, the parties are in disagreement with each other. In will construction cases the costs of litigation are borne by the estate on the theory that the testator expressed his intention so ambiguously as to necessitate construction of the instrument in order to resolve adverse claims to the property. (*Dean* v. *Northern Trust Co.* 266 Ill. 205.) Legal fees are allowed to a party even though the construction adopted is adverse to his claim. (*Ingraham* v. *Ingraham,* 169 Ill. 432, 471; *Haight* v. *Royce,* 274 Ill. 162.) However, such fees should not be authorized where such construction is unnecessary. (*Brumsey* v. *Brumsey,* 351 Ill. 414; *Bartlett* v. *Mutual Benefit Life Ins. Co.* 358 Il. 452.) The criterion is whether an honest difference of opinion exists. *In re Estate of Reeve,* 393 Ill. 272, 294; *La Salle Nat. Bank* v. *MacDonald,* 2 Ill.2d 581; *Strickland* v. *Strickland,* 271 Ill. 614.

In applying that criterion, analogy may be made to *Cahill* v. *Cahill,* 402 Ill. 416. Although the court there re-

jected the plaintiff's interpretation that the Rule in *Shelley's* case applied to a will, it did allow him attorney fees on the ground that a remainder to "heirs of blood" presented a serious question of construction of first impression. Similarly, in the instant case the words "children or heirs" presented a "serious question" not previously determined in Illinois case law. In view of the fact that we have vindicated plaintiff's primary contention that the Bigelow will was a "model of ambiguities," which required construction in order to resolve issues not previously adjudicated between parties, plaintiff should be entitled to attorney fees.

Defendants contend that the fees allowed plaintiff were excessive. However, a cursory review of this record, without attempting to summarize plaintiff's four schedules of services, reveals that this litigation, extending over 15 years, and including some 50 parties, necessitated research and argument on a multitude of legal questions. These problems and services included: locating and securing jurisdiction of foreign and enemy nationals in time of war; the applicability of the doctrine of *res judicata* (argued some three times) and of the Rule in *Shelley's* case to the terms of the Bigelow will; the validity and effect of the de Haven adoption in Colorado; establishing Louise de Haven's citizenship; the propriety of the Attorney General's participation under the Trading With the Enemy Act; the subsidiary litigation over the dismissal of the German beneficiaries; the effect of the death of Sarah Von Campe; the right of the trustee to withdraw the State Street property from the trust; the consolidated pleadings and rearguments thereon; the stipulation of facts, exhibits, and preparation for trial; and finally, the trial itself and subsequent arguments on the findings.

Plaintiff's counsel lists some 3,643 hours of service over 15 years, including 411 hours in court. The master allowed him fees for 3,582 hours at a base rate of $25 for court and research time alike, which amounted to $89,550. That

rate was applied to all counsel herein and was based on both expert testimony and the standard employed where payments are made out of the property in litigation. See: *Home for Destitute Crippled Children* v. *Boomer,* 320 Ill. App. 541, 550.

We cannot accept the Attorney General's oversimplification of this litigation as involving merely a construction of the words "children or heirs" in the Bigelow will. In our judgment the issues were interrelated and defy separation in computing fees. In fact, the master's denial of fees for services relating to the million dollar State Street property was tantamount to a substantial reduction of plaintiff's fees. Further exclusions would merely penalize plaintiff for endeavoring to press his claim to a conclusion, and to hurdle the legal roadblocks interposed by defendants' ingenious counsel. The litigation here was costly, not because plaintiff's counsel spent a disproportionate amount of time on any question of law, (*Irwin* v. *Swinney,* (W. D. Mo., W. D.) 45 F.2d 890), but because of the multiplicity of the interrelated issues, for which plaintiff certainly cannot be blamed.

It may be noted, moreover, that even though plaintiff had to meet all the arguments of all the parties, his allowance for fees barely exceeded the $84,712.50 allowed the trustee, who divided the burden of litigation with the Attorney General and duplicated the arguments of the various parties, and was also awarded some $19,145 for nonlegal services.

In our judgment Raymond de Haven was properly allowed fees covering his entire claim, including the defense of the collateral attack on his adoption, since the elimination of his claim, either on jurisdictional grounds or by a construction of the will, would have benefited all those claiming the de Haven share. Those fees were therefore properly charged solely against the de Haven share.

With respect to the legal fees allowed the German daughters and niece of Louise, we see no reason to interfere

with the judgment of the Appellate Court. Our conclusion is the same as to the fees allowed the Caldwells to protect their indefeasible interests specified in the 1920 decree, and as to those allowed to defendant Lohrer, who contested plaintiff's interpretation of the will.

In determining the proper allocation of these fees we must reject defendant Lohrer's contention that this litigation involves only the de Haven share, which should solely bear its costs. In view of the omissions, reservations and scope of the 1920 decree, this litigation resolves for the first time the nature and extent of the interest of Louise and Sarah and their children. Defendant Lohrer's interest would not have been the same if plaintiff had prevailed in his interpretation of the will. Had plaintiff established the applicability of the Rule in *Shelley's* case, testatrix's granddaughter Sarah would have had a fee simple, which defendant Lohrer would now hold as sole devisee of Sarah. Under our interpretation, Sarah had only a life estate, and defendant Lohrer acquired a ⅓ interest in the fee under the Bigelow will, as did her brothers Edwin and Otto. Inasmuch as she had sufficient interest in this litigation to have incurred $9,000 in counsel fees to contest it, it hardly behooves her to insist that this litigation involves only the de Haven share. Consequently, the chancellor and the Appellate Court properly assessed fees against both the von Campe and de Haven shares.

Whether the Caldwell portion of the estate should also bear a proportionate share of the total fees authorized is a more difficult question. There is a plausible ring to the Attorney General's contention that if the 1920 decree were not *res judicata* of the issues raised by the plaintiff, then the litigation equally concerned the three portions of the estate. It is patent, however, that the artfully drawn 1920 decree did specifically enumerate the exact percentage of the equitable fee vested in each of the Caldwells, and provided that such interests were indefeasible. No such de-

termination was, or could have been made as to the interests of either Louise or Sarah or their issue. In fact, the decree reserved questions of construction arising after their deaths. Furthermore, the identical persons are entitled to the identical percentages in the Caldwell estate, regardless of how we resolve this litigation. Consequently, we perceive a logical distinction for excluding the Caldwell share from bearing an equal proportion of the legal fees. However, insofar as counsel for the trustee represented all the beneficiaries, and purported to protect the Caldwell share of the corpus, that share should be charged with a proportion of the trustee's counsel fees.

In view of the propriety of the standard for computing the individual counsel fees, and the amount of the total estate, which is approximately one and one-half million dollars, it is our judgment that neither the total fees assessed nor the amount assessed against the respective shares can be deemed arbitrary or excessive. Cf. *Logan* v. *Harris Trust & Savings Bank,* 8 Ill. App. 2d 61.

Under this analysis, the judgment of the Appellate Court is substantially affirmed. However, in view of our modification in the allocation of the trustee's counsel fees, the cause must be remanded to the circuit court with directions to enter a decree in accordance with the views expressed herein.

*Judgment modified and affirmed and cause remanded, with directions.*