761 N.E.2d 299 (2001)
326 Ill. App.3d 569
260 Ill.Dec. 455
CHRISTINE A.T., Petitioner-Appellee,
v.
H.T., a/k/a H.S., a minor, Respondent-Appellee, (Frank F., Ettamay F., and Michael A. F., Intervenors-Appellants).
Nos. 3-00-0776, 3-01-0091.
Appellate Court of Illinois, Third District.
December 4, 2001.
*301 Stephanie Ames-Cutkomp (argued), Orion, for Ettamay F., Frank F., Michael A.F.
Christine A.T., New Boston, for Christine A.T.
Thomas A. Blade (argued), Moline, for H.T.
Justice SLATER delivered the opinion of the court:
Intervenors Frank F., Ettamay F. and Michael A.F. appeal from the trial court's order denying their petition to vacate an adoption decree. We reverse and remand.

Facts
On December 28, 1999, petitioner Christine A.T. filed a petition to adopt 12-year old respondent H.T. H.T.'s mother, Brenda S., and her father, Nickie T., split up in 1991, when H.T. was four years old. Nickie married petitioner in 1993, and H.T. began living with petitioner and her father in May or June of 1996. In July of 1996 Brenda S. died. On August 10, 1999, Nickie was killed in an automobile accident. Following the filing of the adoption petition by Christine, the trial court entered an adoption decree on February 15, 2000.
On June 15, 2000, the intervenors filed a motion to inspect the adoption record. Two of the intervenors, Frank and Ettamay F., are H.T.'s maternal grandparents; Michael F. is H.T.'s maternal uncle. The intervenors subsequently filed a motion to intervene and to vacate the adoption decree. That motion asserted that the intervenors had not received notice of the adoption proceedings as required by statute. Intervenors also alleged that H.T. had complained of abuse, drug use and excessive drinking by petitioner. In addition, intervenors asserted in an amended motion to vacate that petitioner was unfit on the bases of drug addiction, habitual drinking, and failure to protect H.T. from conditions in the environment injurious to her welfare. Those conditions included allegations that petitioner allowed her 15-year old daughter, T.B., to abuse alcohol and have sexual relations with more than 20 boys, and also that H.T. was exposed to sexual contact with an unknown male. The motion was supported by affidavits from H.T.'s older half-sister, P.S., two of petitioner's neighbors, H.T.'s aunt and uncle, and intervenors' attorney, Stephanie Ames Cutkomp.
On August 11, 2000, petitioner filed a response to the motion to vacate denying the intervenors' allegations. Petitioner also filed counter-affidavits, the results of a drug screening test indicating that T.B. had tested negative, and a letter from the Illinois Department of Children and Family Services (DCFS). The letter from DCFS stated that reports of alleged substance misuse by T.B. and of alleged inadequate supervision and risk of sexual injury to T.B. and H.T. were "unfounded."
On September 13, 2000, the circuit court issued a letter ruling denying intervenors' motion to vacate. The court found that petitioner was not required to give notice to the intervenors and therefore all statutory requirements for jurisdiction were satisfied. The court then stated that "[t]he second issue * * * to consider is the best interests of the minor child." The court mentioned the affidavits and counter-affidavits but concluded that there was insufficient evidence to disturb the judgment "based on the present allegations and evidence." No evidentiary hearing was held.

Analysis
The intervenors first contend that the trial court erred in finding that they were not entitled to notice of the adoption petition. Intervenors rely on section *302 5(B)(h) of the Adoption Act (750 ILCS 50/5(B)(h) (West 1998)) which states:
"B. A petition to adopt a child other than a related child shall state:
* * *
(h) If it is alleged that the child has no living parent and that no guardian of such child is known to petitioners, then the name of a near relative, if known, shall be set forth, or an allegation that no near relative is known and on due inquiry cannot be ascertained by petitioners[.]"
It is undisputed that petitioner did not name the intervenors or any other "near relative" in her petition for adoption. Intervenors recognize, however, that this requirement is inapplicable to the adoption of a "related child":
"C. A petition to adopt a related child shall include the information specified in sub-paragraphs (a), (b), (d), (e), (f), (i) and (k) of paragraph B * * *." (Emphasis added.) 750 ILCS 50/5(C) (West 1998).
Section 505(B) sets forth the requirements for a petition to adopt a child "other than a related child." (Emphasis added.) 750 ILCS 50/5(B) (West 1998). Subparagraph (h), requiring notice to a near relative, is contained in that section. Section 505(C), on the other hand, specifically delineates which subparagraphs are applicable to a petition to adopt a related child, and subparagraph (h) is conspicuously absent. Accordingly, it is evident that the legislature did not intend to require notice to a near relative in a proceeding to adopt a related child. Section 1(B) of the Adoption Act provides in part:
"B. `Related child' means a child subject to adoption where either or both of the adopting parents stands in any of the following relationships to the child by blood or marriage: parent, grand-parent, brother, sister, step-parent, step-grandparent, step-brother, step-sister, uncle, aunt, great-uncle, great-aunt, or cousin of first degree." (Emphasis added.) 750 ILCS 50/1(B) (West 1998).
The intervenors argue that while petitioner was H.T.'s step-parent while H.T.'s father was alive, when Nickie T. died petitioner ceased to be a step-parent and became a "former step-parent." We are aware of no authority, and intervenors offer none, for the rather startling proposition that the death of a child's biological parent severs the step-parent/step-child relationship. Intervenors argue that sections 601(b)(3) and 607(b)(1.5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601(b)(3); 5/607(b)(1.5) (West 1998)) evince a legislative acknowledgment that "death and divorce sever all rights that a step-parent has to visitation or custody with the former step-child." We disagree.
Section 601(b) of the Marriage Act sets out the prerequisites for commencing a child custody proceeding. Those prerequisites vary depending upon the status of the person seeking custody. For example, a parent can seek custody by filing a petition for dissolution of marriage (750 ILCS 5/601(b)(1)(i) (West 1998)) or a petition for custody (750 ILCS 5/601(b)(1)(ii) (West 1998)). A non-parent can only file a petition for custody if the child is not in the physical custody of one of his parents. 750 ILCS 5/601(b)(2) (West 1998). A step-parent can seek custody by filing a petition if all of the following circumstances are met:
"(A) the child is at least 12 years old;
(B) the custodial parent and stepparent were married for at least 5 years during which the child resided with the parent and stepparent;

*303 (C) the custodial parent is deceased or is disabled and cannot perform the duties of a parent to the child;
(D) the stepparent provided for the care, control, and welfare to the child prior to the initiation of custody proceedings;
(E) the child wishes to live with the stepparent; and
(F) it is alleged to be in the best interests and welfare of the child to live with the stepparent as provided in Section 602 of this Act." 750 ILCS 5/601(b)(3) (West 1998).
A similar set of conditions is required for a stepparent to petition for visitation. See 750 ILCS 5/607(b)(1.5) (West 1998). According to intervenors, the "negative implication" of these sections is that former stepparents have no rights, except when the specific criteria of the sections are met. Accordingly, argue the intervenors, if the legislature did not give a former stepmother the status of a parent in the dissolution setting, and felt compelled to allow custody only under specific circumstances, it follows that the legislature would not accord the prior stepmother the status of "related" for the purpose of adoption.
In construing a statute, the primary task is to ascertain and effectuate the intent of the legislature. Statutory construction is a question of law, subject to de novo review. People v. Richardson, 196 Ill.2d 225, 256 Ill.Dec. 267, 751 N.E.2d 1104 (2001).
The intervenors' argument is flawed in several respects. First, although custody, visitation and adoption each involve a relationship with the child, they are clearly not identical concepts. The legislature could rationally treat stepparents in an adoption situation differently from those in a custody or visitation context. Second, the fact that a stepparent is not given the same status as a parent under the Marriage Act has little bearing on whether that stepparent should be considered as "related" to her deceased spouse's child under the Adoption Act. The relationships recognized under the definition of "related child" extend not only to stepparents and stepgrandparents, but to stepsisters, stepbrothers, great uncles and aunts and even first cousins. Such an expansive definition suggests an inclusive, rather than exclusive, interpretation of the statutory language. Finally, we note that one of the conditions necessary for a stepparent to seek custody or visitation under the Marriage Act is that the "custodial parent is deceased or is disabled and cannot perform the duties of a parent." (Emphasis added.) 750 ILCS 5/601(b)(3)(C) (West 1998); see also 5/607(b)(1.5)(C) (West 1998). Of course, under the intervenors' theory, if the child's parent is deceased then the stepparent is no longer a stepparent at all; she is merely a "former stepparent". The Marriage Act, however, makes no such distinction. Given the lack of authority for the intervenors' position, as well the broad definition of related child contained in the Adoption Act, we decline to adopt a definition of stepparent which ceases upon the death of the child's biological parent. Accordingly, H.T. was a "related child" and petitioner was not required to give notice to the intervenors.
Intervenors warn that construing the Adoption Act in this manner would allow any person who ever had the status of stepparent to adopt a child without notifying other relatives who could have information affecting the adoption decision. Intervenors offer the example of a hypothetical hasty Las Vegas marriage closely followed by the accidental death of the biological parent. Such a scenario, argue the intervenors, could result in the adoption of a child by a virtual stranger, perhaps motivated by a desire to collect social *304 security benefits or control a child's inheritance.
We agree that the scenario posited by the intervenors would raise troubling issues. Of course, similarly disturbing situations could be created by envisioning a greedy or otherwise improperly motivated stepsister, uncle, grandparent, great-uncle or first cousin. We note that the Adoption Act gives the trial court discretion to order an investigation of persons seeking to adopt a related child, although such investigations are not required. See 750 ILCS 50/6(D) (West 1998). Perhaps it would be in the child's best interest if an investigation was required in all cases. In addition, requiring notice to near relatives even in the adoption of a related child might enable the trial court to make a more fully informed decision. Courts, however, have no legislative powers. A court must interpret and apply statutes in the manner in which they are written, not rewrite them to conform to the court's notions of orderliness or public policy. See Henrich v. Libertyville High School, 186 Ill.2d 381, 238 Ill.Dec. 576, 712 N.E.2d 298 (1998).
As this court has stated previously:
"Construction and interpretation of a statute is a question of law for the court and, regardless of the court's opinion regarding the desirability of the results surrounding the operation of the statute, the court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute." Toys "R" Us, Inc. v. Adelman, 215 Ill.App.3d 561, 568, 158 Ill.Dec. 935, 574 N.E.2d 1328, 1332-33 (1991).
We hold that, based on the plain language of the Adoption Act, the trial court did not err in finding that H.T. was a "related child" and therefore intervenors were not entitled to notice of the adoption proceedings.
Finally, intervenors contend that the trial court erred in failing to order an investigation pursuant to section 50/6 (750 ILCS 50/6 (West 1998)) and in failing to hold an evidentiary hearing. We disagree with the former proposition, but we agree that an evidentiary hearing should have been held.
If the allegations contained in the intervenors petition to vacate had been presented to the trial court before the adoption decree had been entered, we would agree that failing to order an investigation would have been an abuse of discretion. However, where, as here, there was no indication of the need for such an investigation, the court cannot be faulted for declining to order one. The Adoption Act specifically makes such investigations discretionary in cases of related adoptions. 750 ILCS 50/6(D) (West 1998).
We believe, however, that the allegations contained in the petition to vacate, along with the supporting affidavits, were sufficient to warrant an evidentiary hearing. Although it is not designated as such, intervenors' petition to vacate must be construed as a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 1998). The purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known at the time judgment was entered, would have prevented entry of the judgment. Physicians Insurance Exchange v. Jennings, 316 Ill.App.3d 443, 249 Ill.Dec. 337, 736 N.E.2d 179 (2000); In re Petition of Glick, 259 Ill.App.3d 371, 198 Ill.Dec. 106, 632 N.E.2d 165 (1994). The petition must allege a meritorious defense or claim in the original action and petitioner's due diligence in presenting the claim *305 or defense and filing the petition. Klein v. La Salle National Bank, 155 Ill.2d 201, 184 Ill.Dec. 420, 613 N.E.2d 737 (1993). Petitioners must prove each element by a preponderance of the evidence. Klein, 155 Ill.2d 201, 184 Ill.Dec. 420, 613 N.E.2d 737; Physicians Insurance, 316 Ill.App.3d 443, 249 Ill.Dec. 337, 736 N.E.2d 179. Although relief may be granted solely on the basis of affidavits and the record of the prior proceedings, if a disputed issue of material fact exists, an evidentiary hearing is required. See Klein, 155 Ill.2d 201, 184 Ill.Dec. 420, 613 N.E.2d 737; Physicians Insurance, 316 Ill.App.3d 443, 249 Ill.Dec. 337, 736 N.E.2d 179. Section 2-1401 proceedings seek to invoke the equitable powers of the court when the exercise of such power is needed to prevent an injustice. See Petition of Glick, 259 Ill.App.3d 371, 198 Ill.Dec. 106, 632 N.E.2d 165.
In this case the affidavits supporting and opposing the petition clearly raised factual issues concerning petitioner's fitness and whether the adoption of H.T. by petitioner was in H.T.'s best interests. The trial court should have conducted an evidentiary hearing to determine the truth or falsity of intervenors' allegations and whether they would have prevented the entry of the adoption order.
We are aware of a line of cases in which our supreme court has stated that in a collateral attack on an adoption decree, the sole inquiry is whether the court had jurisdiction. See Orme v. Northern Trust Co., 25 Ill.2d 151, 183 N.E.2d 505 (1962); Gebhardt v. Warren, 399 Ill. 196, 77 N.E.2d 187 (1948); Ashlock v. Ashlock, 360 Ill. 115, 195 N.E. 657 (1935); McConnell v. McConnell, 345 Ill. 70, 177 N.E. 692 (1931). This court has made similar statements. See In re J.D., 317 Ill.App.3d 445, 251 Ill.Dec. 110, 739 N.E.2d 1043 (2000) (citing Orme); Dahl v. Grenier, 126 Ill. App.3d 891, 81 Ill.Dec. 870, 467 N.E.2d 992 (1984) (citing Orme and Gebhardt). We believe that these cases are distinguishable from the circumstances presented here. Gebhardt, McConnell and Ashlock were appeals from partition actions which involved challenges to adoptions that had taken place many years prior to the partition action. Orme, the most recent supreme court case, involved a will contest challenging, inter alia, an adoption that occurred nearly 40 years earlier. In such cases a rule limiting the inquiry to jurisdictional issues promotes finality. However, "[w]hile adoption proceedings should be `final' and the status determined in an adoption proceeding should not be disturbed by subsequent or collateral litigation, such does not prevent a section 2-1401 proceeding." Petition of Glick, 259 Ill.App.3d at 373, 198 Ill.Dec. 106, 632 N.E.2d at 167. Indeed, the Adoption Act specifically contemplates the use of section 2-1401 petitions, while also promoting the finality of adoption orders by limiting their use to a one year period. See 750 ILCS 50/20b (West 1998). Accordingly, we believe that intervenors are not limited to raising only jurisdictional issues, but may assert any grounds that, if known to the trial court at the time judgment was entered, would have prevented entry of that judgment. See Petition of Glick, 259 Ill. App.3d 371, 198 Ill.Dec. 106, 632 N.E.2d 165 (reversing denial of section 2-1401 petition and remanding for evidentiary hearing).
For the reasons stated above, the judgment of the circuit court is reversed and this cause is remanded for further proceedings.
Reversed and remanded.
HOLDRIDGE and McDADE, JJ., concur.