# Illinois Official Reports

## Appellate Court

*Bank of America, N.A. v. Judevine*, 2015 IL App (1st) 140532

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., as Trustee of the Trust Under Agreement of Herbert W. Kochs, f/b/o Phyllis Anderson Picker dated April 23, 1958, Petitioner, v. DONNA MARIE JUDEVINE, THEODORE JUDEVINE, ROBERT SHAW, WILLIAM SHAW, ALEXANDER KOCHS, NELSON SHAW, AND EMILY KOCHS, Respondents-Appellees (William Eugene Judevine, Jr., Robert Judevine, David Kochs, William Kochs, Stephen Kochs, James Shaw II, Kathryn Shaw Kirrish, and Stephanie Kochs, Respondents-Appellants). |
| District & No. | First District, First Division <br> Docket No. 1-14-0532 |
| Filed | January 26, 2015 |
| Rehearing denied | February 23, 2015 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action involving a dispute as to whether the remainder of the trust created for the settlor's third wife should be distributed between 4 named grandchildren of the settlor or 15 of his grandchildren, the trial court erred in granting summary judgment in favor of the 4 named grandchildren, since the trust was unambiguous to the extent that it directed the remainder of the trust to be paid to the settlor's grandchildren, it individually named his 4 grandchildren living at the time, and in view of the fact that the trust became latently ambiguous when additional grandchildren were subsequently born, the preference for equal treatment of descendants of equal degree and for construction of a will or trust that most closely follows the statutes of descent favoring a class gift should be applied; furthermore, the denial of the after-born grandchildren's motion for reimbursement of their attorney fees was reversed on the ground that the trial court abused its discretion in finding the provision of the trust relied on was unambiguous when it was, in fact, ambiguous, and therefore, the trial court's judgment was reversed and the cause was remanded for further proceedings. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-32109; the Hon. Neil H. Cohen, Judge, presiding. |

| Judgment | Reversed and remanded. |

| Counsel on Appeal | Levin Schreder & Carey Ltd., of Chicago (James R. Carey and David E. Lieberman, of counsel), for appellants. |
| | Law Office of William P. O'Keefe, of Chicago (William P. O'Keefe, of counsel), for appellees. |

| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion. |
| | Justice Connors concurred in the judgment and opinion. |
| | Justice Cunningham dissented in part and concurred in part, with opinion. |

**OPINION**

¶ 1    This case concerns whether $1.6 million remaining in an irrevocable trust should be divided among 4 grandchildren, or among 15. Petitioner-appellee Bank of America, N.A. (Bank of America), as trustee under an April 23, 1958, trust agreement of Herbert W. Kochs for the benefit of Phyllis Anderson Picker (the Trust), filed a petition to construe the Trust. Respondents-appellants William Eugene Judevine, Jr., Robert Judevine, David Kochs, William Kochs, Stephen Kochs, James Shaw II, Kathryn Shaw Kirrish, and Stephanie Kochs (the "after-born grandchildren") and respondents-appellees Donna Marie Judevine, Theodore Judevine, Robert Shaw, William Shaw, Alexander Kochs, Nelson Shaw, and Emily Kochs filed cross-motions for summary judgment on the issue of whether the Trust only provided for Donna Marie Judevine, Theodore Judevine, Robert Shaw, and William Shaw, (the "named grandchildren") to be the remainder beneficiaries. The after-born grandchildren also sought, in a separate motion for partial summary judgment, reimbursement for their attorney fees from the assets of the Trust.

¶ 2    The trial court found that the Trust unambiguously provided only for the four then-living grandchildren (*i.e.*, the named grandchildren) as remainder beneficiaries, and therefore the trial court granted the named grandchildren's motion and denied the after-born grandchildren's motion. The trial court also deferred ruling on the after-born grandchildren's motion for partial summary judgment for attorney fees until Bank of America filed a brief addressing the petition.

¶ 3    On appeal, the after-born grandchildren contend the trial court erred in finding that the Trust unambiguously excluded them as remainder beneficiaries and in deferring a decision with respect to their motion for attorney fees. For the following reasons, we reverse the judgment of the trial court and remand this cause for further proceedings.

¶ 4                                    BACKGROUND

¶ 5    Herbert W. Kochs, the settlor of the Trust, met his third wife, Phyllis Anderson Picker, in 1955 when he was 52 years old and the chairman and chief executive officer of the Diversey Company corporation, a chemical company founded by the settlor and traded on the American Stock Exchange until 1978, when it was acquired for about $55 million. Ms. Picker, by contrast, was 23 years old and working in New York as a showgirl. They married in Juarez, Mexico, in November 1955, about eight months after Herbert divorced his (second) wife of 19 years.

¶ 6    Herbert and Phyllis, however, divorced childless about two years later, in April 1958, following allegations that Herbert was physically violent toward Phyllis. Pursuant to the terms of the divorce settlement agreement with Phyllis, Herbert established the Trust to provide income to Phyllis for life (and then to Phyllis's mother, if she survived Phyllis). The Trust, which was "irrevocable and not subject to amendment," was drafted by his divorce attorney, rather than his long-time estate planning attorneys, and executed the day before the divorce decree was entered. The Trust was funded with 8,450 shares of Diversey Company common stock. Paragraph C of the Trust provided in pertinent part as follows:

> "Upon the death of both Phyllis Anderson and her mother, ***, the Trust Estate *** shall be distributed in equal shares to *those who are then living of the Settlor's grandchildren, namely*:
>
> William Shaw and Robert Shaw ***, and
>
> Susan Doniphan Hamilton and
>
> Oliver Theodore Hamilton, IV, ***,
>
> provided, however, that if any of such grandchildren are then deceased leaving one or more descendants then living, the share which such deceased grandchild would have received if then living shall be distributed to his or her then living descendants, *per stirpes*." (Emphasis added.)

In addition, the Trust provided in paragraph D that, notwithstanding anything to the contrary in the Trust, any portion of the Trust that were to become distributable to a "grandchild" who had not reached the age of 35 would vest in that grandchild but would be retained by the trustee. The portion would then be distributed either to the grandchild upon reaching that age or "if [the grandchild] shall die before attaining such age then upon such death the Trustee shall distribute such portion of the estate of such deceased grandchild."

¶ 7    When Herbert executed the Trust, his only grandchildren were the named grandchildren: William and Robert were Herbert's grandchildren by his first wife, Elizabeth, whereas Susan and Oliver were the grandchildren of his second wife, Mildred.

¶ 8    Herbert died in 1993, and Phyllis lived another 18 years, dying in 2011. Phyllis's mother was no longer living, so paragraph C of the Trust required the trustee to distribute the corpus

of the Trust. By 2011, however, Herbert had 11 additional grandchildren[1] (the after-born grandchildren), 8 of whom were the grandchildren descended from his second wife, Mildred (in addition to the named grandchildren Susan and Oliver). The other three after-born grandchildren were descended from his fourth wife, Paula.

¶ 9　　On September 13, 2011, Bank of America petitioned the trial court to construe the Trust, alleging that there was a latent ambiguity with respect to whether the settlor's after-born (but unnamed) grandchildren were included as remainder beneficiaries, where the provision at issue named the settlor's "grandchildren" but also specified the four then-living grandchildren. Bank of America noted that the residual amount of the trust approximated $1.6 million.

¶ 10　　The named grandchildren and the after-born grandchildren filed cross-motions for summary judgment with respect to the issue of whether the Trust was ambiguous as to the remainder beneficiaries. The named grandchildren's motion included two letters, dated August 1972 and August 1975, sent by settlor to "Continental Illinois National Bank and Trust Company of Chicago" (the then-trustee of the Trust and the Crispin trust). In these letters, the settlor states that the remaindermen of the Trust were his "four" oldest grandchildren: William and Robert Shaw, and Donna and Theodore Judevine.[2]

¶ 11　　The after-born grandchildren's motion included a copy of the May 20, 1955, trust that the settlor executed for the benefit of his second wife, Mildred (the Crispin Trust), whom he divorced on March 8, 1955. The Crispin Trust was funded with 30,000 shares of Diversey Corporation common stock (settlor's company) and 1,000 shares of Victor Chemical Works common stock (settlor's father's company). Under the terms of this trust, Mildred received a lifetime income, and upon her death, the residuary estate would be paid to either the children of settlor and Mildred, or if any child predeceased Mildred and left descendants, the deceased child's grandchildren *per stirpes* would benefit.

¶ 12　　In addition, the after-born grandchildren's motion included a copy of a 1968 decree issued by the trial court that construed the testamentary trusts established by settlor's parents, August and Adelaide Kochs. The trial court's 1968 decree recounted that Adelaide's trust benefitted settlor's children only from his first two wives and excluded those he had with his fourth wife, Paula, namely, Martin (who died childless) and Justin (whose children, Stephanie, Alexander, and Emily Kochs, were born after the distribution of the trust estate). Finally, the after-born grandchildren's motion also had attached a sworn declaration by Denise Axtell, settlor's executive assistant from 1970 until his death, who stated that settlor always treated his children and grandchildren "alike," and had indicated that he wanted to " 'make things right' " for Martin and Justin because of their exclusion from settlor's parents' trusts.

¶ 13　　In a written order, the trial court granted the named grandchildren's motion and denied the after-born grandchildren's motion. The trial court specifically found that there was no

---

[1]Another grandchild had already died, but the record does not indicate whether she produced any then-living descendants.

[2]The named grandchildren also included an affidavit from William Shaw, purportedly attesting that settlor's will gave a disproportionate share of the estate to his two youngest sons whom settlor had with his fourth wife. The trial court, however, granted the after-born grandchildren's motion to strike this affidavit and did not consider it.

latent ambiguity because the after-born grandchildren failed to identify any extrinsic evidence "from the time the Trust *** was executed" that created the latent ambiguity. The trial court further found that, under Illinois case law, where a trust provides for a gift to specific individuals and also describes them as a class (and with nothing otherwise to show intent), the gift is one to individuals and the class description is mere identification. The trial court thus determined that only the named grandchildren were the proper remainder beneficiaries under the Trust.

¶ 14    The trial court "entered and continued" the after-born grandchildren's motion for partial summary judgment on the issue of attorney fees so that Bank of America, the trustee, would have an opportunity to file a brief (to which the after-born and named grandchildren would be able to respond).

¶ 15    This appeal followed.

¶ 16                                    ANALYSIS
¶ 17                    The Remainder Beneficiaries Under the Trust
¶ 18    The after-born grandchildren contend that the trial court erred in denying their motion for summary judgment and granting the named grandchildren's motion. Specifically, they argue that the trial court erroneously found that paragraph C of the Trust was unambiguous and that it only provided for the named grandchildren to be remainder beneficiaries because the class description in paragraph C was merely a descriptor. The after-born grandchildren argue that there is a latent ambiguity in paragraph C of the Trust: upon the death of Phyllis and her mother, the remaining Trust estate was to be distributed to "settlor's grandchildren," but the provision then individually names all four of settlor's grandchildren who were in existence at the time the Trust was executed. Therefore, we must first determine whether the provision at issue in paragraph C is a latent ambiguity. If so, we then need to determine whether the settlor intended to benefit either the entire class of grandchildren or only the named grandchildren. The parties do not cite any controlling Illinois authority, and our research has revealed none.

¶ 19    Since the parties filed cross-motions for summary judgment, they conceded that no material questions of fact exist and that only a question of law is involved that the court may decide based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of cross-motions for summary judgment, however, does not establish that there is no issue of material fact, nor is a trial court obligated to render summary judgment for either party. *Id.* We review the trial court's decision as to cross-motions for summary judgment *de novo*. *Id.* ¶ 30. In addition, this case concerns the construction of a trust, which is a question of law we also review *de novo*. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 19.

¶ 20    It is well established that the same rules of construction used in regard to wills are applicable to the construction of trust agreements. *Storkan v. Ziska*, 406 Ill. 259, 263 (1950). A trust is to be interpreted for the purpose of determining the settlor's intention, which is "paramount." *Id.* While a settlor or testator is presumed to know the existing law concerning the disposition of his property at the time he creates the dispositive instrument (*Sennot v. Collet-Oser*, 36 Ill. App. 3d 928, 933 (1976)), it is important to note that "technical rules of construction of trusts and wills are not present in the testator's mind at the time he is making his bequest in a will or trust" (*Storkan*, 406 Ill. at 263). As such, the intention is to be

gathered from the whole instrument, and if the intention may be gathered from its language without reference to rules of construction, there is no occasion to use the latter. *Id.*

¶ 21  Where, however, there is "an honest difference of opinion," a term in a trust is typically considered ambiguous. *Orme v. Northern Trust Co.*, 25 Ill. 2d 151, 165 (1962). A latent ambiguity "does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Black's Law Dictionary 93 (9th ed. 2009). Where a term is found to be ambiguous, a court may rely upon rules of construction to ascertain the donor's intent. *Harris Trust & Savings Bank v. Beach*, 118 Ill. 2d 1, 4 (1987). One of these rules provides that equal treatment of descendants of equal degree is preferred, rather than "an excessive share being given to members of one group to the partial or total exclusion of members of another, equally meritorious group." *Continental Illinois National Bank & Trust Co. of Chicago v. Llewellyn*, 67 Ill. App. 2d 171, 189 (1966) (citing *Jackman v. Kasper*, 393 Ill. 496, 511 (1946)). In addition, our supreme court generally prefers the construction of a will or trust that most closely follows the statutes of descent. *Id.* (citing *Cahill v. Cahill*, 402 Ill. 416 (1949), and *Condee v. Trout*, 379 Ill. 89 (1942)). Rules of construction, however, are "court created presumptions of what the ordinary settlor or testator would have intended the ambiguous terms to mean," and they may not be allowed to defeat what the ordinary settlor would have intended. *Beach*, 118 Ill. 2d at 4. Thus, if a rule of construction subverts these intentions, it must be discarded. *Id.*

¶ 22  With respect to class gifts, although the general rule is that a settlor's gift to persons named is a gift to them individually and not as a class, " 'the mere fact that he mentions by name the individuals who make up the class is not conclusive.' " *Strauss v. Strauss*, 363 Ill. 442, 451 (1936) (quoting *Stedman v. Priest*, 103 Mass. 293, 296 (1869)). As our supreme court held long ago, " 'The decisive inquiry is whether or not the testator, in making the particular gift in question, did so with group-mindedness, whether in other words, he was looking to the body of persons in question as a whole or unit rather than to the individual members of the group as individuals; if the former, they take as a class.' " *Krog v. Hafka*, 413 Ill. 290, 299 (1952) (quoting 57 Am. Jur. Wills § 1259, at 831 (1948)). The fact that there is a natural class among the beneficiaries "is ofttimes held to be indicative of a class gift." *Id.* Other factors to be considered in determining whether the settlor intended a class gift are: the relation of the testator to the objects of his bounty; the subject matter of the gift; and the skill of the draftsman who drew the will. *Id.* at 299-300. "It is difficult to be more definite than to say that a gift is a class gift if, from the entire will and the circumstances surrounding its making, one may conclude that the testator intended to treat the takers of the gift as a group and not as individuals–that his interest in them was a 'collective' interest." Homer F. Carey & Daniel M. Schuyler, Illinois Law of Future Interests 340 (1941).

¶ 23  In this case, the trial court erred in finding that the provision at issue in paragraph C was unambiguous. To the contrary, although the provision directed that the remainder of the estate was to be distributed to the settlor's grandchildren, it also individually named his four grandchildren living at that time. Prior to the after-born grandchildren's birth, the terms of paragraph C were unambiguous: they simply directed the remainder of the Trust to be paid to his grandchildren, who were all individually named. It was when the settlor's additional grandchildren were subsequently born that a latent ambiguity arose. In this respect, the trial court further erred in finding (in a footnote) that the after-born grandchildren were alleging a patent ambiguity. A patent ambiguity "clearly appears on the face of the document." Black's

Law Dictionary 88 (8th ed. 2004). Here, the language of paragraph C was not ambiguous on its face–indeed, had the settlor not had any additional grandchildren, paragraph C would not have been ambiguous at all. Instead, the ambiguity arose from a collateral matter (*i.e.*, the subsequent birth of additional grandchildren) when Bank of America tried to apply the terms of paragraph C. See Black's Law Dictionary 88 (8th ed. 2004). On these facts, and in light of Illinois's strong preference that heirs of equal degree be treated equally, there is at least "an honest difference of opinion" with respect to whether the settler intended the remainder of the Trust to be distributed to either the named grandchildren only or the named and after-born grandchildren (*Orme*, 25 Ill. 2d at 165). Consequently, paragraph C is latently ambiguous, and we must resort to rules of construction to ascertain the settlor's intent.

¶ 24    The preferences for equal treatment of descendants of equal degree and for the construction of a will or trust that most closely follows the statutes of descent (*Llewellyn*, 67 Ill. App. 2d at 189) seem to favor construction of paragraph C as providing a class gift. The opposing parties are both grandchildren by blood of the settlor, and the statute governing intestate descent would provide for a distribution to all grandchildren, not solely the named grandchildren. 755 ILCS 5/2-1(b) (West 2012) ("If there is no surviving spouse but a descendant of the decedent: the entire estate to the decedent's descendants per stirpes."). In addition, turning to the other relevant factors, since the claimed beneficiaries are all the settlor's grandchildren, there is a natural class among them, which is "indicative of a class gift." *Krog*, 413 Ill. at 299. The other remaining relevant factors (see *id.* at 299-300) also appear to indicate that the settlor intended a class gift. The settlor's relation to all of his grandchildren, "the objects of his bounty," was of the same degree of kinship and there is nothing in the record to indicate that settlor intended to cut off any grandchild who had the misfortune of being born after the date the Trust was executed. We further note that the subject matter of the gift concerned the settlor's entire remaining Trust estate and not some trivial token of appreciation or a gift that would be of particular relevance to only the four named grandchildren. Finally, the draftsman here was the settlor's divorce attorney rather than his long-standing estate planning law firm, indicating a likely oversight in failing to include the possibility of the after-born grandchildren. Viewed in this light, the rules of construction appear to favor a class gift.

¶ 25    As noted above, the parties do not cite controlling authority, and our independent research has found no Illinois case on this precise point. We find support, however, in *In re Estate of Clarke*, 331 A.2d 408 (Pa. 1975). There, the settlor created a single trust " 'so long as any of my grandchildren, EVAN, MARGOT, CLAUDINE and JEAN, shall be under the age of twenty-five (25) years,' " and when "none of said grandchildren" were under 25, the trust would be divided among equal shares among the then-living grandchildren (or the issue of a deceased grandchild). *Id.* at 409. The settlor died in May 1970, but two additional grandchildren were born after her death. *Id.* at 410. The trial court found that the two posthumous grandchildren were entitled to a share in the trust estate, and the Pennsylvania Supreme Court affirmed. *Id.* The court noted that the indication of group-mindeness is sufficient if the group is capable of either future increase or decrease. *Id.* at 411. On this point, the court observed that the settlor's trust provided that none of the grandchildren would receive a distribution unless there was no grandchild under the age of 25, and then if any grandchild died before the age of 25 and had no issue who survived until the time of distribution, that grandchild "would be removed from the group of takers," *i.e.*, that share

would be divided among the surviving grandchildren (or issue of a predeceased grandchild). *Id.* at 412. The court concluded that it was clear that the settlor intended to benefit "a group capable of at least downward fluctuation," and that the requisite group-mindedness to indicate an intention to make a class gift was shown. *Id.*

¶ 26 Here, as in *Estate of Clarke*, the Trust both referred to settlor's "grandchildren" as a group and also individually named all of the grandchildren alive at the time the Trust was executed, but it did not make any specific provision to either include or exclude after-born grandchildren. Furthermore, the Trust in this case postponed possession on the part of any grandchild who did not reach the age of 35, at which point that grandchild's share would be distributed to that grandchild. If the grandchild did not survive to the age of 35, the trustee was to "distribute such portion of the estate" of the deceased grandchild. Viewing the Trust as a whole, the settlor here also apparently intended to benefit a group capable of at least downward fluctuation, which normally shows the group-mindedness indicative of a class gift. Accord *In re Trust Under the Last Will & Testament of Hennes*, 240 So. 2d 859, 860-61 (Fla. Dist. Ct. App. 1970); *Cain v. Dunn*, 241 So. 2d 650, 652-53 (Miss. 1970). We agree with the holding in *Estate of Clarke* and find it to be persuasive authority, as well.

¶ 27 We recognize that there is nothing in the record that clearly indicates a rationale for the settlor to favor only four of his grandchildren to the exclusion of the others, especially given that two of the after-born grandchildren shared the same mother and grandmother as two of the named grandchildren. Nonetheless, there is some evidence in the record that may indicate that the settlor intended only the named grandchildren to be entitled to the remainder of the Trust estate under paragraph C. Namely, the settlor's August 1972 and August 1975 letters to the then-trustee of the Trust and the Crispin trust seem to indicate at least an acknowledgement that only the named grandchildren were the Trust's remaindermen (although the letters are silent regarding whether the settlor *intended* that disposition). In addition, the trial court's 1968 decree recounted that settlor's mother's trust benefitted settlor's children only from his first two wives and not those he had with his fourth wife. This could thus indicate that the Trust was part of a complicated estate plan in which the grandchildren were to receive similar shares from various trusts and wills, and which is implied by settlor's purported statement to his long-time administrative assistant to "make things right" for the children of his fourth wife, who were excluded from at least settlor's parents' trusts.

¶ 28 In sum, we hold that there is an unresolved issue of fact concerning the settlor's intent as to paragraph C of the Trust. Consequently, the trial court erred in granting the named grandchildren's motion for summary judgment, and we therefore reverse the trial court's judgment and remand this case for further proceedings.

¶ 29 The named grandchildren, nonetheless, cite numerous cases in support of their claim that the Trust was not ambiguous. Those cases, however, are factually distinguishable because the omitted beneficiaries were already alive when the documents were executed. See *Continental Illinois National Bank & Trust Co. of Chicago v. Clancy*, 18 Ill. 2d 124, 127 (1959) ("The settlor knew [the omitted beneficiary] well for about a year and a half prior to the execution of the 1928 trust."); *Young v. Whisler*, 19 Ill. 2d 501, 504-05 (1960); *In re Estate of Hurst*, 329 Ill. App. 3d 326, 339 (2002) ("When Chuck drafted his will to indicate he currently had two children, Alicia and Julie, his further references to 'my children' were to include them and to exclude Lori and Todd, who were alive at the time the will was drafted."); *Leibrandt*

*v. Adler*, 30 Ill. App. 2d 257, 259-60 (1961). Here, the after-born grandchildren had not been born at the time the Trust was executed, and there is nothing to indicate that the class designation was merely a descriptor, as in the cases relied upon by the named grandchildren. Therefore, those cases are factually distinguishable and unavailing.

¶ 30    The named grandchildren also mistakenly rely upon *Sennot*. There, the settlor established trusts for his daughters and his son, Fowler. *Sennot*, 36 Ill. App. 3d at 929. Fowler died childless, and Fowler's trust provided that, if he died childless, his estate would be distributed to the settlor's surviving issue. *Id.* The issue on appeal concerned whether the Fowler's adopted nieces and nephews were considered the settlor's surviving issue. *Id.* This court held they did not because at the time the settlor's trust was executed, adopted children were not the "lawful issue" of the settlor of a trust. *Id.* at 932. Here, it is undisputed that the after-born grandchildren are the settlor's surviving issue.

¶ 31    In addition, although the *Sennot* court did not state whether the trust at issue was irrevocable, a close reading of the decision strongly suggests it was. The adoptees noted that the settlor's 1941 will disproportionately favored them and argued that this demonstrated the settlor's intent to include them in his trust. *Id.* This court, however, rejected that argument, stating that "it could be argued that the will provision evidences the fact that [the settlor] recognized that his later adopted grandchildren were not covered by his earlier trust, and that *he intended to provide for the adoptees through his will and not through his trusts*." (Emphasis added.) *Id.* By contrast, the Trust in this case was irrevocable, meaning that the settlor did not have the option of providing for the after-born grandchildren either in his will or the Trust. The named grandchildren's reliance upon *Sennot* is therefore unavailing.

¶ 32                The Motion for Partial Summary Judgment as to Attorney Fees

¶ 33    The after-born grandchildren also challenge the trial court's refusal to rule on their motion for partial summary judgment that sought reimbursement for their attorney fees. The trial court stated that it would not decide the matter in the absence of a brief on this issue from the trustee, Bank of America. Although we are remanding this case for further proceedings based upon the ambiguity in the Trust, we elect to address this issue also because it is likely to recur on remand and it will provide guidance to the lower court and thereby expedite the ultimate termination of the litigation. See *Pielet*, 2012 IL 112064, ¶ 56.

¶ 34    It is axiomatic that the costs of litigation to construe a trust in which there are adverse claims are generally paid by the trust estate. See *Ingraham v. Ingraham*, 169 Ill. 432, 471 (1897) (observing the general rule that, "when the testator has expressed his intention so ambiguously as to create a difficulty, which makes it necessary to go into a court of chancery to get a construction of the will, *** the costs of litigation must be borne by the estate"). The key consideration in determining the existence of an ambiguity is whether there is "an honest difference of opinion." *Orme*, 25 Ill. 2d at 165. If there is, these legal fees are allowed to a party "even though the construction adopted is adverse to his claim." *Id.* (citing *Ingraham*, 169 Ill. at 471). "The party appealing the construction placed upon a will by the lower court, however, does so at his own risk and cost." *Landmark Trust Co. v. Aitken*, 224 Ill. App. 3d 843, 858 (1992) (citing *Glaser v. Chicago Title & Trust Co.*, 401 Ill. 387, 393 (1948)). The trial court has discretion in determining the amount of attorney fees and will be reversed only if its discretion is abused. *Spencer*, 2014 IL App (1st) 121585, ¶ 35; *Ingraham*, 169 Ill. at 471-72.

¶ 35    Here, the trial court abused its discretion in failing to award reasonable attorney fees to the after-born grandchildren. The trial court found that paragraph C of the Trust was unambiguous and that it solely provided that the named grandchildren were the remainder beneficiaries. As we have already held, however, paragraph C was ambiguous because it provided for a class of beneficiaries to take as remaindermen (the settlor's "grandchildren") and also named all of those class members individually without any instruction (either to include or exclude) as to the plainly foreseeable event that the settlor would subsequently have additional grandchildren. Under well-established controlling precedent, the after-born grandchildren were entitled to an allowance for their reasonable attorney fees.

¶ 36    The named grandchildren insist that paragraph C of the Trust is unambiguous, and thus no attorney fees are allowable since there can be no difference of opinion. We have already rejected that argument, so it does not provide a premise upon which to deny attorney fees.

¶ 37                                    CONCLUSION

¶ 38    The trial court erred in granting the named grandchildren's motion for summary judgment with respect to the construction of paragraph C of the Trust. In addition, the trial court improperly denied the after-born grandchildren's motion for partial summary judgment with respect to reimbursement for attorney fees. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings.

¶ 39    Reversed and remanded.

¶ 40    JUSTICE CUNNINGHAM, dissenting in part and concurring in part.

¶ 41    There is nothing ambiguous about the trust language by which the settlor identified the four individual grandchildren whom he wished to take the remainder of the trust. The fact that he specifically *named* them further supports the interpretation of lack of ambiguity. He knew exactly whom he wished to have the remainder of the trust; and that is the four grandchildren whom he identified by name. It does not require great imagination to realize that the settlor could easily have said "any" of his grandchildren then living, without naming them. The fact that he specifically named the four grandchildren shows his intent to pass the remainder to any member of *that group* of four named grandchildren who were living when the remainder of the trust was to be distributed. The trial court gave the language its plain meaning and reached the conclusion that, in my view, is supported by case law, common sense, and the trust document.

¶ 42    An ambiguity does not exist simply because it is advantageous to the litigants to declare a document ambiguous. In this case, without an ambiguity, the trial court's ruling is clearly correct. In that scenario, the after-born grandchildren take nothing. I, like the trial court, would decline to find an ambiguity where none exists.

¶ 43    Since the settlor could easily have said "my grandchildren" without specifically naming them, in such a scenario the after-born grandchildren would clearly be remaindermen and entitled to share in the distribution. However, that is not what he did. On the contrary he *specifically* named the four grandchildren whom he wished to benefit from the money remaining in the trust. That was done for a reason. The most obvious reason is that he wanted *those specific, four individuals*, to be the persons to whom the remainder of the trust would

be distributed. This is the most direct and clear interpretation of the document. It is not ambiguous in either a latent or patent sense. This was a family which was sophisticated in the use of trusts to benefit their offspring. As such, it is reasonable to conclude that the settlor was well aware of exactly how he wished the remainder of the trust to be distributed. There is nothing in this record to suggest that the settlor had a sudden burst of generosity toward yet-unborn grandchildren. On the contrary, everything points to a carefully crafted trust for the specific purpose for which it was created and if there was any money left over, it would be distributed to those named and only them.

¶ 44    The named grandchildren point out that the unsworn statement of Denise Axtell may be the underpinning of the after-born grandchildren's argument regarding the supposed latent ambiguity. Axtell's statement is interpreted by the after-born grandchildren to mean that the settlor wanted to include all of his grandchildren, including those who were yet unborn and unknown to him, in the distribution of his bounty. Of course, this includes themselves. However, the same facts relied upon by them to support their argument can also support the finding that the settlor was well aware of the fact that *some*, but not all, of the grandchildren were provided for in various family trusts. If that is so, it can hardly be said that, through happenstance or oversight, the settlor omitted the after-born grandchildren from the distribution list of the trust, when all along he meant to include them. Specifically, Axtell's statement could be interpreted to establish that the settlor was well aware of the fact that not all eligible grandchildren were included in family trusts. Accordingly, the settlor found other means to make up for the exclusion. The settlor, being sophisticated in the use of trusts and giving the document its plain meaning, knew that once he established this particular trust with its restrictive language regarding revision, revocation, or amendment of any kind, he could *never* change its terms. It is worth repeating that there was a family history of providing for some, but not all, grandchildren via trust distributions. This further supports a lack of ambiguity. The settlor's parents did it as did the settlor on at least two other occasions. This would support an inference that because *he knew* that he could never change the trust document he was very specific regarding the grandchildren who were to be the remaindermen upon termination of the trust.

¶ 45    While the majority posits that since all the parties claiming to be remaindermen are the settlor's grandchildren, therefore this suggests that he intended to make "a class gift," this overlooks the fact that the only grandchildren that he had at the time of the creation of the trust were those whom he identified by name. He could easily have omitted their names and just designated his "grandchildren" as the remaindermen, but he chose not to do so. There are no cases from Illinois or elsewhere on point with the facts of this case. Accordingly, we would be wise to tread lightly and give the trust document its plain and obvious meaning, rather than search for a latent ambiguity as the after-born grandchildren have convinced the majority to do.

¶ 46    If we attempt to decode what the settlor intended regarding any grandchildren born after the trust was established, we must also accept the reasonable inferences that flow from the facts. For example, it is a reasonable interpretation to assume that if he knew that he would have additional grandchildren, yet specifically named the four grandchildren, it was because he wanted *those four* to be the beneficiaries. If on the other hand he had no way of knowing if and when he would have additional grandchildren, it can reasonably be inferred that he specifically chose to leave the remainder of the trust to the four who were then a part of his

life, rather than speculate about future additions to the group that may or may not ever occur. It is a reasonable inference to conclude that that is why he identified them by name rather than just saying "my grandchildren." The settlor specifically said that the remainder of the trust should be distributed to those of his four grandchildren who are then living when the trust terminates.

> "*[N]amely*: William Shaw and Robert Shaw of Newtown, Iowa, and Susan Doniphan Hamilton and Oliver Theodore Hamilton, IV, of 70 E. Scott St., Chicago Illinois, provided, however, that if any of such grandchildren are then deceased leaving one or more descendants then living, the share which such deceased grandchild would have received if then living shall be distributed to this or her then living descendants, per stirpes." (Emphasis added.)

It is clear that the settlor knew that the four grandchildren may themselves have children and the trust provided for the four grandchildren's children to get the distribution in the event of the death of the named grandchild. All of this shows a level of sophistication and understanding of the uncertainty of the future with respect to who would survive to receive the distribution. The settlor chose to keep it simple by naming the intended beneficiaries to the exclusion of all others.

¶ 47    The term "those who are then living" refers to any of the *four* identified grandchildren who are alive at the time of distribution. It does not include or contemplate *any yet unborn* grandchildren. Unlike the majority, I do not find that *In re Estate of Clarke*, a Pennsylvania case, supports a conclusion that the language of the trust is ambiguous, nor does it support the further leap that the settlor intended a class gift. In the *Clarke* case, the settlor's instructions were more extensive and suggested the recognition that the group would likely expand. Nothing in this case suggests that the settlor considered expansion of the group beyond the four named individuals. Further, unless the settlor was clairvoyant, I disagree with the majority's statement that it was a "plainly foreseeable event that the settlor would *** have additional grandchildren." *Supra* ¶ 35. Simply stating something does not establish its truth. No one can say that the birth of children to a specific, defined group is plainly foreseeable. It is not.

¶ 48    The finding of a latent ambiguity is separate from the finding of what the settlor intended. Upon remand to the trial court, the determination regarding the intent of the settlor in light of the majority's holding of ambiguity will be within the fact-finding province of the trial court. Since the majority declares the trust to be latently ambiguous, and if that is so, then the trial court is the proper venue to determine what the supposedly ambiguous language really means.

¶ 49    Upon remand, the trial court will have the responsibility for reviewing the evidence to determine the settlor's intent. In my view, that evidence will lead the trial court to whatever conclusion the evidence establishes and it is not for this court to suggest where that evidence will lead. Thus, this court should use caution and refrain from suggesting to the trial court what its ultimate finding should be.

¶ 50    I take note of the fact that in its determination, the trial court did not consider the two letters drafted by the settlor, dated 1972 and 1975, since the court found no ambiguity in the trust document. While I agree with that approach, under the trial court's ruling that there was no ambiguity, I think the letters will be helpful to the court on remand. The letters strongly suggest that the settlor was well aware that only the named grandchildren would be the

remaindermen of the trust to the exclusion of all others. Thus, although I believe the document is unambiguous, upon remand, if the court considers extrinsic evidence such as the letters, it will be helpful in determining whether the settlor intended to benefit yet-unborn grandchildren who may never have materialized, or whether he intended to benefit his four living grandchildren, who were then a part of his life and whom he identified by name.

¶ 51 I do not attach a high level of significance to the fact that the settlor's divorce attorney and not his estate attorney drafted the trust document. Any attorney, whether he practiced estate or divorce law, knows the meaning of the word "namely." When the settlor used that word, it was to identify and highlight *exactly* whom he meant to receive the remainder of the trust. Thus, upon remand, the trial court will have the opportunity to consider the evidence and reach a conclusion established by the facts.

¶ 52 On the issue of attorney fees, I agree with the majority's conclusion that the circuit court should not have denied attorney fees to the after-born grandchildren. The cases cited in support of the denial either allow the trial court discretion to award fees or do not prohibit such an award. This court as well as the litigants acknowledge the novelty of the issue presented by this case. So, although the trial court has discretion in awarding fees, that discretion must be exercised within the bounds of propriety given the facts of each case. Accordingly, given the unique nature of this case as well as the general rule regarding payment of litigation costs from the trust in question when there is a *bona fide* dispute, the trial court in this case should have allowed the fees. That would have been an appropriate exercise of its discretion. Thus, the court abused its discretion in refusing to allow the after-born grandchildren attorney fees.

¶ 53 For the reasons stated, I would affirm the trial court on the issue of whether the four named grandchildren are the intended beneficiaries of the remainder of the trust. However, I would reverse the trial court on the question of whether the after-born grandchildren are entitled to attorney fees.