2026 IL App (1st) 242362-U

SIXTH DIVISION
March 20, 2026

No. 1-24-2362

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SUSAN GOOD, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 23 L 8370 |
| | ) | |
| DIANE KWIATKOWSKI-WALSH And | ) | |
| OLD NATIONAL WEALTH MANAGEMENT, | ) | Honorable |
| | ) | Anthony C. Swanagan, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Gamrath concurred in the judgment.

**ORDER**

¶ 1   *Held:*   We reverse the circuit court's dismissal of appellant's claims against appellee Diane Kwiatkowski-Walsh per section 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2022)) because the purported affirmative matter did not preclude appellant's claims. We affirm the court's dismissal of appellant's claim against appellee Old National Wealth Management but alter the dismissal

from with prejudice to without prejudice because the court based its prejudice finding on the same erroneous ground as the claims against Kwiatkowski-Walsh.

¶ 2    This case arises from a dispute between two sisters, the Plaintiff-Appellant Susan Good and the Defendant-Appellee Diane Kwiatkowski-Walsh (Walsh). Lorraine Kwiatkowski (Lorraine), their mother, was the beneficiary of an Illinois Land Trust (Land Trust). Per the terms of the trust agreement (the "Land Trust Agreement"), Good and Walsh would become beneficiaries with equal shares upon Lorraine's death unless the "property" in the trust was previously "conveyed." Following Lorraine's death, Good sued Walsh, claiming that in violation of Good's rights as a beneficiary of the Land Trust with an equal interest, Walsh had been living rent-free at Lorraine's residence (hereinafter "the House"), property held in the Land Trust, following her death. Walsh moved to dismiss, arguing that Lorraine had a separate *inter vivos* trust through which she had altered the beneficiary provisions of the Land Trust Agreement to grant Walsh the ability to use, occupy, and control the House following Lorraine's death until the time of Walsh's death.

¶ 3    Good also sued Old National Wealth Management (Old National), a division of Old National Bank (the Bank) for breach of contract, claiming it was the trustee of the Land Trust and had breached the Land Trust Agreement by not selling the House after the trust existed for 20 years. Old National moved to dismiss as well, arguing that Good had sued the wrong party (though admitting the Bank was the Land Trust trustee), the 20-year provision was not self-executing, and the Bank never received a directive to sell the Land Trust property from a beneficiary.

¶ 4    The circuit court ruled for both defendants and dismissed Good's claims with prejudice. On appeal, Good claims this ruling was erroneous as to all claims. For the reasons below, we (1) reverse the dismissal of Good's claims against Walsh; (2) affirm the dismissal of Good's claim against Old National but alter it to a dismissal without prejudice; and (3) remand for further proceedings.

¶ 5                                    BACKGROUND

¶ 6     Good filed her complaint on August 22, 2023, bringing claims against Walsh for an accounting and unjust enrichment, and against Old National for breach of contract. Respecting Walsh, Good claimed that both she and Walsh had equal interests as the co-beneficiaries of the Land Trust, which included in its holdings the House, a residence in Riverside, Illinois, placed in the Land Trust on March 2, 1994. Counter to these equal interests, however, Good alleged that Walsh resided in the House "without compensation to the [Land] Trust" from the time of Lorraine's death until the filing of the complaint. Because of this improper usage, Walsh should be ordered to "account for her use and occupancy." Good also alleged this conduct led to Walsh enriching herself to the detriment of the Land Trust, entitling Good to compensatory damages amounting to her equal share of the fair rental value of the House.

¶ 7     As to Old National, Good claimed that per the terms of the Land Trust Agreement, Old National was required to sell any trust property remaining in the trust after 20 years elapsed from the date of creation (June 9, 1973), but the House remained in the Land Trust.

¶ 8     Good attached the Land Trust Agreement to her complaint, which, in relevant part:

> a.  Named the Bank of Lyons as Trustee.
>
> b.  Placed title to two parcels in Sleepy Hollow, Illinois, in the Land Trust[1];
>
> c.  Made Julian Kwiatkowski and Lorraine Kwiatkowski the beneficiaries, who possessed the entire beneficiary interest in the Land Trust as joint tenants with right of survivorship; and

---

[1] Walsh's motion to dismiss claimed the Land Trust property, from the beginning, only consisted of the House. For the purposes of this appeal, we must accept the allegation in Good's complaint and supporting documents (including the Land Trust Agreement) regarding what property was placed in the Land Trust and when. See *Mercado v. S&C Electric Co.*, 2025 IL 129526, ¶¶ 18-19.

d.  Dictated that upon the death of the of the survivor between Julian and Lorraine, the "property not having been previously conveyed," the entire interest went "to their children in equal shares."

The Land Trust Agreement further stated, "No assignment of an interest hereunder shall be binding on the Trustee until the original or a duplicate of the assignment is lodged with the trustee and the reasonable fees of the trustees for the acceptance thereof paid." Finally, the Land Trust Agreement contained a provision stating, "If any property remains in this trust twenty years from this date it shall be sold at public sale by the trustee on reasonable notice, and the proceeds of the sale shall be divided among those who are entitled thereto under this trust agreement."

¶ 9    On December 7, 2023, Walsh filed a motion to dismiss per section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)), arguing that the accounting claim was subject to dismissal under section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)) because land trust beneficiaries have no duty to account to each other under Illinois law, and count II should be dismissed pursuant to section 2-619(a)(9) because Walsh had a superior right in the House that precluded Good's claim. In support of the section 2-619(a)(9) argument, Walsh stated that (1) Julian died in 2008, leaving Lorraine as the lone beneficiary of the Land Trust; (2) before her death, Lorraine executed an *inter vivos* trust, which she amended twice; and (3) the second (and operative) amendment to the *inter vivos* trust (hereinafter the "Living Trust") granted Walsh a "life estate in the House, which included rent-free use and occupancy of the House." Walsh attached the Living Trust to her motion but did not include the original *inter vivos* trust document or the first amendment. In the Living Trust, dated July 19, 2008, in Article V (titled, "Gifts on My Death"), section 5.3(c)(i), the document reads:

"(c)(i) Retention and Use of Residence by Diane M. Walsh. The trustee is authorized to retain my Village of Riverwoods, Illinois residence ("residence") for Diane M. Walsh's life notwithstanding that the residence may constitute a large part or all of the principal of the trust and may lack the diversification or productivity ordinarily considered prudent for trust investments. Diane M. Walsh may continue to use and occupy the residence rent-free, provided she pays all taxes, assessments, insurance premiums, ordinary repair bills, and other expenses of protecting and maintaining the residence. Notwithstanding the preceding sentence, if any expense payable by [] Diane M. Walsh pursuant to the preceding sentence would be chargeable against the principal of the trust as is necessary to reimburse her for payment of that expense or, if requested to do so by Diane M. Walsh, the trustee shall pay that expense directly from the principal of the trust. As long as Diane M. Walsh pays expenses as required by the preceding two sentences of this paragraph, the trustee shall not sell the residence except as provided in the following paragraph.

(ii) Sale and Purchase of Residence. Upon Diane M. Walsh's written request, the trustee shall sell all or any part of the residence for its fair market value and shall retain the proceeds of the sale as principal. Diane M. Walsh may at any time purchase the residence from the trustee for its fair market value, determined as of the date [] Diane M. Walsh delivers to the trustee a written purchase offer."

The Living Trust named Lorraine as "the Primary Trustee," and Good and Walsh as "Successor Co-Trustees," to assume Lorraine's duties upon her "resignation, death or disappearance," or if she was certified incompetent. The Living Trust contains no explicit reference to the Land Trust or Land Trust Agreement.

¶ 10    Good responded, arguing that she was entitled to an accounting as a co-beneficiary, and that Walsh's purported life estate in the House was invalid because the Living Trust had "no legal interest in the [Land] Trust Property." Walsh replied on January 29, 2024.

¶ 11    On February 14, 2024, Old National also moved to dismiss Good's claim against it under section 2-619.1, arguing (1) dismissal under section 2-619 was appropriate because Old National Bank Wealth Management was not a properly named defendant, as it is "a division of Old National Bank ***, not a separate entity"; and (2) dismissal was appropriate under section 2-615 because Good failed to allege a necessary element, breach, as the trustee had no duty per the Land Trust Agreement to sell the House without direction from the beneficiar(ies) of the Land Trust (citing *Heritage County Bank & Trust Co. v. State Bank of Hammond*, 198 Ill. App. 3d 1092 (1990)). In so arguing, Old National admitted the Bank was the successor in interest to the Bank of Lyons as Land Trust trustee.

¶ 12    On October 29, 2024, the circuit court granted both motions and dismissed Good's complaint with prejudice. On Walsh's motion, the court found that section 5.3(c) of the Living Trust "is plainly directed to a trust that has been granted control of Lorraine's personal property," which included her beneficiary interest in the Land Trust. The court continued that Good did not dispute the Living Trust's existence or the validity of the amendment to the Living Trust and only argued "that there is a conflict and a 'disconnect' between the [Land Trust Agreement] and [the Living Trust]." Finding that there was no "such conflict or disconnect," the court explained:

> "The [Land Trust] explicitly treats the benefits of the trust retained by Julian and Lorraine Kwiatkowski as personal property that can be assigned and conveyed as such. As noted above, those benefits also explicitly include the right to manage and control the property. Those benefits were to descend to the Kwiatkowski's daughters in equal shares provided

that the property had not been previously conveyed," but "Lorraine's trust agreement conveyed possession and control of the property to [Walsh] via the grant of a life estate." While this conveyance did not "extinguish" Good's Land Trust beneficiary interest, the court found, it did delay "that interest until [Walsh] passes away or until the renting or sale of the premises." Because Walsh now had a superior interest in the House, she owed no accounting to Good for use and occupancy and did not unjustly enrich herself at the Land Trust's expense.

¶ 13    The circuit court next concluded that Walsh's superior interest in the House also precluded Good's claim against Old National, as it left Good with no right to direct Old National to sell the property during Walsh's life. In so finding, the court noted that Good's "misnomer" in failing to name the Bank was "not material."

¶ 14    Good filed her notice of appeal on November 26, 2024.

¶ 15                                     JURISDICTION

¶ 16    The circuit court dismissed Good's claims with prejudice on October 29, 2024, and Good filed her notice of appeal on November 26, 2024, giving this court jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 17                                     ANALYSIS

¶ 18    On appeal, Good claims the circuit court erred in dismissing both claims against Walsh and the claim against Old National. We start with the claims against Walsh.

¶ 19    The circuit court dismissed Good's claims for an accounting and unjust enrichment against Walsh pursuant to section 2-619(a)(9) of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2022). In general, a motion to dismiss under section 2-619 admits the legal sufficiency of the plaintiff's claims but argues that an affirmative defense or a defect in the claim

7

bars the plaintiff from recovery as a matter of law. *Mercado*, 2025 IL 129526, ¶ 19. One such instance is where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022); see also *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120-21 (2008). The affirmative matter must be either apparent on the complaint's face or established by the defendant through affidavits or other evidence. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 37. If the defendant makes this initial showing, "the burden shifts to the plaintiff to demonstrate the proffered defense is unfounded or requires the resolution of a material fact." *Id.* Disputed material facts "cannot be disposed of through a section 2-619(a)(9) motion to dismiss." *Ball v. Chicago White Sox, Ltd.*, 2025 IL App 1st 230949, ¶ 31. We review the grant of a section 2-619 motion *de novo*. *Mercado*, 2025 IL 129526, ¶ 19.

¶ 20 The affirmative matter Walsh asserts is that the Living Trust amended the Land Trust Agreement to grant Walsh a superior beneficiary interest in the House which precludes Good from seeking rent from Walsh following Lorraine's death. Specifically, Walsh contends that Lorraine, via section 5.3(c) of the Living Trust, assigned to her a "life estate," which included the exclusive right to use and occupy the House, along with the ability to sell the house if she desires, until the time of her death. This provision of the Living Trust, Walsh argues, satisfied the "previously conveyed" language in the Land Trust Agreement's beneficiary provision, and thus constituted a valid amendment of the Land Trust Agreement.

¶ 21 The Illinois land trust mechanism is distinct from a standard trust because it "places both the legal and equitable title in the trustee." *In re County Treasurer and ex officio County Collector of Cook County*, 2023 IL App (1st) 220070, ¶ 26. The beneficiaries of an Illinois land trust, meanwhile, possess a personal property interest in the property held in the land trust. *Id.* The

beneficiary is generally understood to have four powers per this personal property interest: (1) to possess, manage, and physically control the real estate held in the land trust; (2) to receive income from that property; (3) to direct the trustee in dealing with that property; and (4) to receive proceeds from the sale of the property. *FirstMerit Bank, N.A. v. Soltys*, 2015 IL App (1st) 140100, ¶ 23.

¶ 22    As a general proposition, Illinois land trusts may be "freely amended." *Dorman v. Central National Bank in Chicago*, 97 Ill. App. 3d 429, 432 (1981). "Unless restricted by an agreement of the parties, amendments concerning the identity of the beneficiaries, the power of direction, or the allocation of proportionate interest in the trust may be effectuated by simple assignment without further documentation." *Id.* Where, however, it is "expressly provided for in the trust instrument, modifications must comply" with the express terms. *Estate of Bantsolas v. Bantsolas*, 377 Ill. App. 3d 684, 687 (2007).

¶ 23    "An *inter vivos* trust is defined as a transfer of property during the lifetime of a settlor and to become effective in his lifetime as contrasted with a testamentary trust which takes effect at the death of the settlor." *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 27 (quoting *Kahn v. First National Bank of Chicago*, 216 Ill. App. Ed 272, 278 n.1 (1991)). A "life estate," per *Black's Law Dictionary*, is a type of "interest in land or other property *** the ownership being measured in terms of duration," specifically, "An estate held only for the duration of a specified person's life." ESTATE, Black's Law Dictionary (12th ed. 2024).

¶ 24    We interpret a trust like a will, with the primary goal of determining the settlor's intent. *Bank of America, N.A. v. Judevine*, 2015 IL App (1st) 140532, ¶ 20. The rules of construction applicable to wills apply equally to trusts. *Id.* Our review of the circuit court's construction of a trust is *de novo*. *Id.* ¶ 19.

¶ 25    The record shows that the Land Trust Agreement's beneficiary provision contains a caveat to Good and Walsh receiving equal shares at Lorraine's death—that the "property" not be "conveyed" beforehand. In another provision, regarding transfer of beneficiary rights, the Land Trust Agreement states that any "assignment of interest" will not be binding on the trustee until record of that assignment is "lodged" with the trustee. The Living Trust is styled as the "Second Amendment" to a previous a *inter vivos* trust. The record does not contain, nor do the parties allege, any of the contents of the initial *inter vivos* trust, or the first amendment thereto. The Living Trust does not explicitly assign Lorraine's beneficiary interest in the Land Trust to the Living Trust. It does, however, purport to grant Walsh additional interest in certain property in the Land Trust, the House, than Walsh would have otherwise been entitled to under the original Land Trust Agreement's beneficiary provision. The record is silent as to whether Lorraine "lodged" the Living Trust with the Land Trust trustee. Walsh provides no additional evidence in support of her section 2-619(a)(9) motion to demonstrate Lorraine's intent in creating the Living Trust, or Julian and Lorraine's intent underlying the Land Trust Agreement.

¶ 26    We find the Living Trust is not sufficiently conclusive on its face to support dismissal under section 2-619(a)(9). It is well-established that the beneficiary of an Illinois land trust possesses only a personal property interest and does not have legal or equitable title in trust property. See *Soltys*, 2015 IL App (1st) 140100, ¶ 21 (quoting *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 607 (7th Cir. 1987)). As a result, the beneficiary cannot transfer a real property interest in the land trust property, though they are generally able to assign their own personal property interest. See *Trust Company of Illinois v. Kenny*, 2019 IL App (1st) 172913, ¶ 57. Here, the Living Trust fails to specify that Lorriane is transferring her personal property interest in granting Walsh the right to use and occupy the House at Lorraine's death. Indeed, Walsh maintains Lorraine granted

her a "life estate," which is generally an interest in real property which Lorraine technically could not grant. *In re Estate of Mendelson*, 298 Ill. App. 3d 1, 3-4 (1998). The Living Trust does not contain specific terms that conclusively illustrate Lorraine's intent, such as "beneficial interest in Land Trust" or "life estate." The most we can conclude from the face of the Living Trust itself is that Lorraine may have intended to alter the beneficiary provision to grant Walsh the superior interest, but she may have instead been attempting to grant Walsh interest in real property. Because the resolution of this issue necessitates inquiry into her intent, we must reverse and remand. *Ball*, 2025 IL App 1st 230949, ¶ 31.

¶ 27    The fact that Lorraine included section 5(c)(ii), permitting Walsh an exclusive right to sell the House, raises additional questions regarding her intent that cannot be answered from the face of the Living Trust alone. For this clause to be effective, Lorraine would have had to lodge the Living Trust with the Land Trust trustee, as the express language of the Land Trust Agreement states no assignment is binding on the trustee otherwise. While this may not have precluded the effect of the assignment on Walsh's ability to use and occupy the House, which are part of the beneficiary rights that do not implicate the trustee (see *Corcoran v. Rothmeier*, 2022 IL App (1st) 201374, ¶ 31-35), the sale of the House, and accompanying transfer of title, unquestionably would require the involvement of the trustee. Illinois law maintains that a beneficiary must follow the express requirements in the relevant land trust agreements for an assignment to be valid. *Bantsolas*, 377 Ill. App. 3d at 687. The Living Trust on its face does not demonstrate that Lorraine followed the lodging requirement; while it is certainly possible Lorraine lodged the assignment with the Land Trust trustee, the support Walsh submitted for her motion does not resolve the issue. If Lorraine did not notify the trustee of the assignment, this could suggest her intent in making the gift in section 5.3(c) was *not* in contemplation of the Land Trust, suggesting she may have been

11

attempting an improper real property transfer. The converse would also be true, as evidence that she did lodge it would indicate the Living Trust was made in direct contemplation of the Land Trust and its requirements. This further demonstrates that determining Lorraine's intent requires factual inquiry. See *Ball*, 2025 IL App 1st 230949, ¶ 31.

¶ 28 The requirement that the Land Trust property be "conveyed" as stated in the beneficiary provision is another place where the documents do not facially resolve the issues at stake, making resolution on a section 2-619(a)(9) motion inappropriate. There is some indication in Illinois law that the assignment of beneficiary interests can constitute a transfer of property under the right circumstances. See *Oak Trust and Savings Bank v. Chicago Title and Trust Co.*, 129 Ill. App. 3d 250, 252 (1984). In a vacuum, this proposition makes sense because an exclusive beneficiary interest, like the one Lorraine possessed before the purported assignment, includes the right to the direct the trustee to sell land trust property or to completely change the beneficiaries of that trust. See *Soltys*, 2015 IL App (1st) 140100, ¶ 23; *Bantsolas*, 377 Ill. App. 3d at 687. But do these general propositions apply to the purported assignment here? The Land Trust Agreement does not specify whether an assignment of partial beneficiary interest constitutes a "conveyance," nor does the Living Trust specify that the gift to Walsh in section 5.3(c) is intended to satisfy the conveyance term of the Land Trust Agreement. Without clarity on this intent from the face of the documents, this is yet another area where additional inquiry is necessary.

¶ 29 Walsh argues that Good should be foreclosed from challenging the validity of the Living Trust on this appeal because she did not raise this argument below and thus waived it. We reject this argument for two reasons. First, waiver is a limitation on the parties, not this court, and a facial review of the Land Trust Agreement and the Living Trust demonstrate that this case was not proper for resolution through a section 2-619 motion to dismiss. See *Galarza v. Direct Auto Insurance*

*Co.*, 2023 IL 129031, ¶ 34. Second, while the record suggests Good failed below to specify the nature of her challenges to the Living Trust in the detail she uses on this appeal, her response to Walsh's motion to dismiss contends that the Living Trust did not effectively alter the Land Trust Agreement's beneficiary language. This was sufficient to present the issue of whether Lorraine successfully amended the Land Trust Agreement through the purported assignment reflected in the Living Trust.

¶ 30    Walsh next argues Good's accounting claim was subject to dismissal under section 2-615 because, as a matter of law, one land trust beneficiary cannot be compelled to provide an accounting to another beneficiary of the same land trust. Generally, whether a claim is subject to dismissal under section 2-615 is a legal issue we review *de novo*, though we note the circuit court did not specifically discuss this argument below. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. Nonetheless, we must consider the claim on this appeal, as Walsh properly raised it below and we may affirm on any basis in the record. See *Zibrat v. City of Chicago*, 2025 IL App (1st) 241273, ¶ 34.

¶ 31    We find that Good's accounting claim survives this specific section 2-615 challenge. Counter to Walsh's stance, Illinois case law suggests beneficiaries of Illinois land trusts may seek an accounting from each other. See *Sajdak v. Sajdak*, 224 Ill App 3d 481, 490-91 (1992); *First Options of Chicago, Inc. v. Stellings*, 215 Ill. App. 3d 1093, 1098 (1991). Accordingly, If Good can demonstrate the Living Trust assignment was invalid, for whatever reason, and she and Walsh had equal beneficiary shares in the Land Trust at the time of Lorraine's death, then Good potentially would have the right to seek an accounting and subsequent reimbursement from Walsh for any use and occupancy of the House to Good's exclusion.

¶ 32    The authorities cited by Walsh to counter this proposition (760 ILCS 3/813.2 (West 2022); *Whalen v. Whalen*, 217 Ill. App. 3d 557, 558 (1991)) fail because those authorities stand only for the general proposition that trustees owe an accounting to beneficiaries, which is not at issue. These authorities are non-responsive to those Good cites, including *First Options*, a case the circuit court only rejected because it found Walsh's superior interest was facially established by the Living Trust, not because *First Options* was inapplicable to land trust beneficiary disputes generally.

¶ 33    Next, Good seeks reinstatement of her claim against Old National, which the circuit court also dismissed per section 2-619. As an initial matter, we note that the parties do not appear to dispute that Good misnamed Old National (instead of the Bank) in her complaint. Instead, Good requests the ability to file an amended complaint on remand, while Old National maintains that apart from the misnomer issue, Good's claim against the Bank should be foreclosed entirely due to Walsh's superior interest in the House. [2] The circuit court agreed with Old National regarding the latter argument. Again, our review is *de novo*. *Mercado*, 2025 IL 129526, ¶ 19.

¶ 34    We affirm dismissal of Good's claim against Old National, but find the dismissal should have been without prejudice, and thus remove the "with prejudice" designation. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 300 (2010). On remand, Good will have the opportunity to amend her complaint to name the appropriate defendant. The circuit court's dismissal with prejudice must be reversed because even conceding Old National's interpretation of the Land Trust Agreement is correct and the 20-year forced sale provision was not self-triggering, Good may be able to demonstrate she shared an equal interest with Walsh and thus may have had some corresponding right to attempt to trigger the provision. In so finding, we make no

---

[2] We note that Old National also argued Good could not show breach based on the misnomer, an argument also obviated by this order.

substantive ruling on the proper interpretation of the 20-year sale provision, Good's right to trigger the provision if she is found to have a co-equal beneficiary interest with Walsh, the potential applicability of *Heritage*, or the impact of the allegation that the House was not placed in the Land Trust until 1994, *after* the 1993 expiration of the first 20 years of the Land Trust's existence. We simply remand the case and leave it to Good and her attorneys to amend the complaint, and if she does, for the newly named defendant to respond as it deems appropriate.

¶ 35                                    CONCLUSION

¶ 36   The Living Trust did not provide affirmative matter per section 2-619(a)(9) to legally preclude Good's claims, making dismissal with prejudice inappropriate as to both defendants. Accordingly, we reverse the circuit court's dismissal of the claims against Walsh and remand for additional proceedings. We affirm the dismissal of Good's claim against Old National based on misnomer, but we alter the dismissal to without prejudice and grant Good leave to amend.

¶ 37   Affirmed in part; reversed in part; remanded with instructions.